# In the United States Court of Federal Claims

No. 10-55V

(Filed Under Seal:  October 28, 2019)

(Reissued:  November 13, 2019)[1]

*************************************
\*

SHINGSHAN LIU and SUE WANG LIU,    \*
as Personal Representatives of the Estate of   \*
DAN LIU, Deceased,    \*
   \*
   \*
             Petitioner,    \*
   \*
v.    \*
   \*
SECRETARY OF HEALTH    \*
AND HUMAN SERVICES,    \*
   \*
             Respondent.    \*
   \*
*************************************

Vaccine Act Case; Review of Claim for Attorneys' Fees and Costs; Reasonable Basis for Filing; Recovery of Fees by Unsuccessful Petitioner; Standard of Review.

*Jennifer Anne Gore Maglio*, Maglio Christopher & Toale, PA, Sarasota, Florida, for Petitioners.

*Daniel A. Principato,* with whom were *Joseph H. Hunt,* Assistant Attorney General, *C. Salvatore D'Alessio,* Acting Director, Torts Branch, Civil Division, *Catharine E. Reeves*, Deputy Director, Torts Branch, Civil Division, and *Heather L. Pearlman*, Assistant Director, Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

<u>OPINION AND ORDER</u>

WHEELER, Judge.

---

[1] Pursuant to Rule 18(b) of the Court's Vaccine Rules, this opinion and order was initially filed under seal.  As required under the Rules, each party was afforded 14 days from the date of issue, until November 12, 2019, to object to the public disclosure of any information furnished by that party.  Neither party submitted any proposed redactions.

This case is before the Court on Petitioners' Motion for Review of the Special Master's decision partially denying Petitioners' motion for attorneys' fees and costs. Liu v. Sec'y of Health & Human Servs., No. 10-55V, 2019 WL 2098165 (Fed. Cl. Spec. Mstr. April 19, 2019) ("Fee Decision").  For the reasons explained below, the Court finds that the Special Master applied too burdensome a standard in evaluating reasonable basis for Petitioners' proceeding with their claim, and thus her decision was not in accordance with law.

## Background

In 2008, Petitioners tragically experienced the sudden death of their son, Dan.  On January 27, 2010, they filed a petition under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10–34 ("Vaccine Act"). The petition alleged that the Menactra (meningococcal) vaccine administered to their son on May 30, 2008, caused an adverse reaction leading to his death at the age of 16 on June 22, 2008.  During the next eight years, Petitioners filed a series of expert reports, each advancing a different theory of the role of the vaccine in Dan's death.   The case ultimately ended in Petitioners' motion to dismiss the case on July 19, 2018.  Dkt. No. 143.

Petitioners' first expert report was not filed until June 5, 2012, partly because of difficulties in obtaining autopsy records.  Dkt. No. 37.  In that report, Petitioners' expert, Dr. Douglas Miller, a neuropathologist, concluded that the cause of death in this case was "brain swelling with brainstem compression" due to "some unknown catastrophic cause." Dkt. No. 37-1 at 4   He went on to express his opinion that death occurred "rapidly from onset, certainly no more than about two hours and quite possibly in only minutes." Id.  Dr. Miller discounted the medical examiner's autopsy opinion that cause of death was cardiac arrhythmia, viewing the evidence for that diagnosis as inadequate, so that it was "informed speculation and not to a reasonable medical probability." Id. at 2.  He also observed that due to its formulation, the vaccine in question could not have infected Dan with an organism or virus causing meningitis.  Id. at 4.  Thus, Petitioners' expert did not support their claims that the Menactra vaccine caused Dan's death.

Shortly after filing Dr. Miller's report Petitioners asked for and received an extension of time to file another expert report.  In December 2012, Petitioners filed the expert report of Dr. Yehuda Shoenfeld.  Dkt. No. 44.  Dr. Shoenfeld theorized that inflammation of the brain described in Dr. Miller's report showed an immune reaction to the vaccine.  In the Fee Decision, the Special Master criticized this report, observing that she thought it mischaracterized Dr. Miller's conclusions.  Fee Decision at *3.

At Respondent's request, further evidence was gathered from Dan's teachers and friends regarding his behavior following his vaccination up until the time of his death.  In March 2014, the Special Master explained in a lengthy Scheduling Order why, in her view,

Dr. Shoenfeld's expert report was not credible and did not satisfy Petitioners' burden of proof. The Special Master also explained that the evidence from friends and teachers did not support Petitioners' claim that Dan had been acting lethargic and sickly since the vaccination. She observed that Petitioners' affidavits regarding Dan's health just prior to his death were different from their statements to police at the time of Dan's death, where they told the police that Dan had not shown any signs of illness on the day before his death. The Special Master granted Petitioners' motion to file supplemental expert reports addressing the issues raised in this Scheduling Order. Dkt. No. 64. Dr. Miller's supplemental expert report was filed on July 1, 2014. Dkt. No. 69. In that report, Dr. Miller stated that Dan's brain had shown very little inflammation at autopsy, and absent that, Dr. Shoenfeld's theory of a fatal autoimmune process in the brain caused by the vaccine could not be supported. Petitioners did not file a supplemental expert report from Dr. Shoenfeld.

In a July 1, 2014 Order, the Special Master summarized the Status Conference held that day, noting that Petitioners' counsel reported a dispute with Petitioners over whether to go forward with the case. Dkt. No. 68. On July 8, 2014, Dr. Shoenfeld's report was stricken upon motion by Petitioners. Dkt. No. 71. Despite these setbacks, Petitioners continued with the case, filing a new expert report from Dr. Waugh, a cardiologist, on March 4, 2015. Dkt. No. 85. Dr. Waugh theorized that the vaccination caused an inflammation of the heart muscle. In response, Respondent filed an expert report by Dr. Sperling, a cardiologist, disputing Dr. Waugh's theory. Dkt. No. 88. Dr. Waugh then filed a supplemental report in response. Dkt. No. 90. The parties then indicated their inability to settle the case after encouragement from the Special Master, and Petitioners requested and were granted an entitlement hearing. Dkt. No. 94.

Before the entitlement hearing could be held, Respondent objected to Petitioners' sudden addition of a new causation theory and medical literature not discussed by Dr. Waugh. Respondent also questioned Dr. Waugh's qualifications for the part of his opinion relating to immunology. This resulted in postponement of the entitlement hearing as well as filing of expert reports by immunologists, Dr. Gershwin for Petitioners and Dr. Rose for Respondents. Dkt. Nos. 107, 111. In April 2017, Petitioners informed the Special Master that their expert cardiologist Dr. Waugh was ill and could no longer participate in the case. In her status conference order on this subject, the Special Master noted the difficulties with Petitioners' case, reminding them that "an expert's opinion is no better than the evidence it is based on." Dkt. No. 117. At this time the Special Master encouraged Petitioners' counsel to speak to his clients about dismissing the case. Fee Decision at *8.

In August 2017, Petitioners submitted an expert report from cardiologist Dr. Yturralde, describing a heart issue different from that relied on by Dr. Waugh, and deferring to the immunologist for any connection to the vaccine. Dkt. No. 120. In December 2017, the Special Master described the flaws in Petitioners' expert's latest theories during a status conference. Dkt. No. 125. Respondent then substituted its expert

cardiologist Dr. Sperling, with a new cardiologist, Dr. Yeager, who also disputed the findings of Petitioners' experts. Dkt. No. 131. In April 2018, the Special Master ordered Petitioners to submit their experts' responses to Dr. Yeager's report. After those reports were filed, in a July 3, 2018 Order, the Special Master "continued to state that petitioners filed expert reports that provided inconsistent theories." Fee Decision at *10.

Shortly after that, on July 19, 2018, Petitioners filed a motion to dismiss the case, stating that they would be "unable to prove that they are entitled to compensation…." Dkt. No. 143 at 1. In granting the motion to dismiss, the Special Master observed that "Petitioners should have moved to dismiss after filing Dr. Miller's expert report. That is when a reasonable basis to proceed ended." Liu v. Sec'y of Health & Human Servs., No. 10-55V, 2018 WL 3990977 at *4 (Fed. Cl. Spec. Mstr. July 19, 2018).

## Law Governing Recovery of Fees

The Vaccine Act permits the award of attorneys' fees and costs even for unsuccessful petitioners, if the Special Master or Court determines that the petition was brought in good faith and also that there was a "reasonable basis" for the claim. 42 U.S.C. § 300aa-15(e)(1). The question of having a reasonable basis for the claim is the focus of this review, since Petitioner's good faith in filing is not challenged. An unsuccessful petitioner seeking fees has the burden to affirmatively demonstrate that the petition has a reasonable basis. McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 304 (2011) (citing Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994)). The statute sheds no further light on the meaning of "reasonable basis" in this context; however, in Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632 (Fed. Cir. 2017), the Federal Circuit recently clarified this standard. While determination of good faith is a subjective judgment, reasonable basis is determined on an objective basis, inquiring as to evidentiary support for the claim described in the petition. Id. at 636. "A claim can lose its reasonable basis as the case progresses," R.K. v. Sec'y of Health & Human Servs., 760 F. App'x 1010, 1012 (citing Perreira, 33 F.3d at 1376–77).

## Fee Decision

After dismissal of their case, Petitioners filed for payment of attorneys' fees and costs totaling $281,852.59. Dkt. Nos. 147, 149. Respondent objected to paying any fees and costs at all, maintaining that Petitioners lacked reasonable basis to file the case in the first place. Dkt. No. 151. Petitioners replied to Respondent's objections and increased their requested fees and costs to add the work in filing the reply, bringing total attorneys' fees and costs requested to $290,179.79. Dkt. No. 153.

In the Fee Decision, the Special Master found that the good faith requirement to support payment of fees was satisfied in this case. She then reviewed the law governing the second requirement, that Petitioners must show a reasonable basis for filing, and found

that "reasonable basis can be lost as the case develops." Fee Decision at *14 (citing Perreira, 33 F.3d at 1377). The Special Master also found that, while the reasonable basis requirement was satisfied at the time of filing, Petitioners lost reasonable basis to proceed after the time they filed their own expert Dr. Miller's report which failed to support vaccine causation in June 2012. At that time "[P]etitioner's claim was clearly undermined and no longer objectively feasible." Id. at *15. The Special Master observed in a footnote that she had the "impression that [P]etitioners' counsel never read Dr. Miller's expert report before she filed it…." Fee Decision at *18 n.2. She also wrote that the expert report stated that the vaccination had nothing to do with Dan's death. Id. She then observed that "[P]etitioners' counsel prolonged a case without reasonable basis for another six years." Id. The Special Master awarded to Petitioners attorneys' fees until the filing of Dr. Miller's first report on June 5, 2012, and also added Petitioners' claims for fees for filing the fee motion and for replying to Respondent's objections to fees. The Special Master denied fees and costs for all other dates. This resulted in an award of about $75,000 in attorneys' fees and costs, a reduction of about $215,000 from the $290,000 claimed. Petitioners have filed a Motion to Review the decision. Dkt. No. 157.

## Standard of Review

This Court has jurisdiction to review decisions of the Special Masters in accordance with 42 U.S.C. § 300aa-12(e)(1)-(2). The Court may set aside a Special Master's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 300aa-12(e)(2)(B). A Special Master's decision on the award of attorneys' fees to unsuccessful petitioners is discretionary, and thus is reviewed under an abuse of discretion standard. Saxton v. Sec'y Health & Human Servs., 3 F.3d 1517, 1520 (Fed. Cir. 1993). If the Special Master "considered the relevant evidence, drew plausible inferences, and articulated a rational basis" for the decision on the award of attorneys' fees and costs, the Court will not find an abuse of discretion. Graham v. Sec'y of Health & Human Servs., 124 Fed. Cl. 574, 578 (2015) (quoting Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1290 (Fed. Cir. 2011)).

## Arguments

## Motion for Review

In their Motion for Review, Petitioners challenge the denial of the majority of their submitted fees and costs, arguing that the Special Master applied an impermissibly elevated standard for determining reasonable basis. They point out that because the Special Master determined that reasonable basis was lost after submission of the first expert report, there was no analysis of the reasonable basis for the remaining activity in the case, which formed a significant portion of the fees and costs. Dkt. No. 157 at 15. Petitioners argue that vaccine case law addressing reasonable basis reveals that courts look to "medical support, in the form of expert reports, medical literature, and medical records showing a causal

connection" to evaluate the requisite evidentiary support.  <u>Id.</u> at 14.  Here, they argue, Petitioners offered eight expert reports by three qualified experts, each of the opinion that the vaccine caused Dan's death.  <u>Id.</u> They also filed 57 medical articles supporting the expert opinions, as well as medical records, including the autopsy report.  This "demonstrated that Petitioners' claim was, at a minimum, feasible."  <u>Id.</u>  They further maintain that the Special Master inaccurately summarized the opinion of their first expert, Dr. Miller.  The Special Master stated in the Fee Decision that Dr. Miller had declared the vaccination to be "unrelated" to Dan's death, and Petitioners assert that Dr. Miller made no such finding.  Further, the Special Master failed to mention Dr. Miller's statement in his supplemental report that there could have been a cardiac arrhythmia.  <u>Id.</u> at 16.  In sum, Petitioners maintain that the Special Master "impermissibly engaged in weighing the evidence rather than deciding feasibility."  <u>Id.</u> at 18 (citing <u>Santacroce v. Sec'y of Health & Human Servs.</u>, No. 15-555V, 2018 WL 405121 (Fed. Cl. Jan. 5, 2018)).

<u>Respondent's Arguments</u>

Respondent opposes the Motion for Review by arguing that "petitioners did not offer any evidence of a factual or medical basis for their claim of vaccine-causation at any point."  Dkt. No. 160 at 13.  Respondent points out that, although Petitioners claim that they submitted ample evidence to support reasonable basis, quantity is not enough. Respondent maintains that because Petitioners' experts failed to agree on one theory, a reasonable basis for proceeding was never established.

<u>Discussion</u>

The question for decision before this Court is whether the Special Master abused her discretion by applying too stringent a standard in analyzing Petitioners' reasonable basis for continuing the case.  In the Fee Decision, the Special Master relied on her conclusions from Petitioners' first expert report, the Miller report, to dismiss the evidentiary value of all of the following expert reports and supporting literature submitted by Petitioners.  However, a reading of the Miller report and supplemental report leads the Court to conclude that it does not contain the definitive opinions described by the Special Master.

The certainty of Dr. Miller's conclusions was diminished because he frequently pointed out the limitations of the autopsy records, samples, and photographs in finding a conclusive cause of death, finally commenting that "this was not a well-done autopsy." Dkt. No. 37-1 at 4.  The Special Master found that "Dr. Miller also ruled out cardiac arrhythmia as the cause of Dan's death."  Fee Decision at *15.  But in fact, while Dr. Miller noted that the cardiac arrhythmia theorized by the Medical Examiner was "informed speculation," <u>Id.</u> at 2, this statement is not conclusive and could be subject to challenge. Moreover, in Dr. Miller's supplemental report, he opines that "there could have been a cardiac arrhythmia based on the finding of a thick interventricular septum . . . ."  Dkt. No.

69-1 at 2.  This might open the door to a heart-related theory such as those discussed by Petitioners' later experts.  In his supplemental report Dr. Miller also addressed Dr. Shoenfeld's hypothesis of an autoimmune reaction affecting the brain, observing that "I cannot say one way or the other whether that hypothesis is accurate."  <u>Id.</u> at 2.  While Dr. Miller pointed out that there was no evidence that the vaccine caused meningitis, he did not state that "the cause of Dan's death was not related to his meningococcal vaccination," as stated by the Special Master in her Fee Opinion at *15.

This Court has noted, that, "[w]hile the Court certainly supports the development of meaningful standards to determine . . . reasonable basis . . . , that goal must be balanced against the public policy of encouraging access by vaccine petitioners to competent counsel."  <u>Allicock v. Sec'y Health & Human Servs.</u>, 128 Fed. Cl. 724, 727 (2016) (citing <u>Chuisano v. United States</u>, 116 Fed. Cl. 276, 285 (2014)).  In this case, the Court finds that the Special Master overstated the strength of the Miller expert and supplemental reports while weighing the feasibility of Petitioners' continued efforts to demonstrate vaccine causation.  The Special Master impermissibly engaged in weighing the evidence presented on the merits, rather than deciding if Petitioners' claims were feasible.  In this case, the Special Master's finding that all reasonable basis was lost after the filing of Dr. Miller's first report is not supported by the record and thus not in accordance with law.  It may be, however, that further review of the record will yield a clearer understanding of the point where Petitioners' pursuit of this case may have lost its reasonable basis.

For these reasons, the Petitioner's Motion for Review is GRANTED.  The Special Master's Fee Decision is VACATED, and this case is REMANDED to the Office of Special Masters for consideration of Petitioners' motion for attorneys' fees and costs consistent with this opinion.


IT IS SO ORDERED.

s/Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge